ORIGINAL

**COURT OF FEDERAL CLAIMS**

FILED
AUG 2 2 2005
U.S. COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **EDWARD SIMS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 05-913C |
| v. | ) | |
| | ) | **CASE NO.** |
| **UNITED STATES POSTAL SERVICE** | ) | |
| | ) | |
| Defendant | ) | |

**COMPLAINT**

**Preliminary Statement**

This Complaint is based upon a breach of a contract between the Plaintiff, Edward Sims, and the Defendant, the United States Postal Service (hereinafter "the Postal Service"), and a dispute as to the rights and obligations of the parties under that contract. Mr. Sims has a property lease with the Postal Service, whereby the Postal Service uses Mr. Sims' property for the purpose of operating a post office, and the Postal Service pays a monthly rent to Mr. Sims. The Postal Service has breached this lease agreement by failing to make timely and complete payments under the terms of the agreement.

In addition, the parties dispute the proper interpretation of, and rights under, the terms of the lease, in that the parties dispute: who is responsible for damages to the leased property, who is responsible for repairs and costs incurred for repairs of that damage, and whether the Postal Service has authority to withhold payments due under the lease.

Plaintiff, Edward Sims, through its undersigned counsel, brings this civil action and hereby alleges the following:

## Jurisdiction

1. This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1491(a)(1) and (b)(2).

2. This Complaint is based upon a lease made by an authorized official of the United States Postal Service obligating the Postal Service to make monthly monetary payments to the lessor for use of the property.

## Parties & Interested Persons

3. Edward Sims ("Mr. Sims") is a resident of 21200 Point Place, Apt. 1603, Aventura, Florida, 33180.

4. The United States Postal Service ("the Postal Service") is an agency of the United States of America and receives appropriated funds from the United States and therefore is within the jurisdiction of this Court.

5. Mr. Harold L. Sulak and Mrs. Frances D. Sulak are the former owners of a piece of property ("the Property") located at 100 3rd Avenue, in Ellensburg, in the State of Washington. On August 1, 1963, the Postal Service entered into a lease agreement with Mr. and Mrs. Sulak, attached to this complaint as Exhibit A ("the Lease"). Pursuant to the terms of this Lease, Mr. and Mrs. Sulak agreed to lease the Property to the Postal Service for use as a post office, and, in exchange, the Postal Service agreed to pay to Mr. and Mrs. Sulak a specified sum each year, payable on a monthly basis.

6. In or about December 2001, the Property was purchased by Mr. Sims from Mr. and Mrs. Sulak, and the rights and obligations of Mr. and Mrs. Sulak under the Lease were assigned to Mr. Sims.

**The Lease Agreement**

7. At all times pertinent to this Complaint, Mr. Sims has been and is the owner of the Property.

8. At all times pertinent to this Complaint, Mr. Sims has been and is the successor in interest of the original lessor of the Lease.

9. At all times pertinent to this Complaint, the Property has been used, and is being used, by the Postal Service as the main post office in Ellensburg, WA.

10. The Postal Service has renewed the lease agreement several times. The most recent renewal occurred on March 14, 2003 (the "2003 Renewal"), and is effective through March 13, 2008, with the Postal Service having the right to execute a further renewal through March 13, 2013. The 2003 Renewal specifies that the Postal Service shall pay to Mr. Sims the annual rental rate of $20,850, that being the rate of $1,737.50 per month, as does the option for the final renewal.

11. As of the date of this Complaint, Mr. Sims has fulfilled all his material obligations to the Postal Service under this lease, and is not in any breach thereof.

**COUNT ONE**

**(Claim Due Upon Breach of Contract)**

12. The Plaintiff realleges and incorporates by reference the allegations contained in paragraphs one through eleven of this Complaint, and further alleges:

13. Beginning in or about January 2005 until the date of this Complaint, the Postal Service paid Mr. Sims $437.55 per month as a monthly lease payment, withholding payments in the amount of $1,299.96 per month.

14. By failing to make payment in full each month under the terms of the lease, the Postal Service is in breach of the lease agreement.

**The Claim**

15. As of the date of this Complaint, the payments to Mr. Sims due and owing by the Postal Service to Mr. Sims, resulting from this breach of contract, amounts to $10,399.68, that sum increasing by $1,299.96 per month.

16. Plaintiff has suffered monetary damages as a result of this breach.

**COUNT TWO**

**(Declaratory Judgment)**

17. The Plaintiff realleges and incorporates by reference the allegations contained in paragraphs one through eleven and paragraphs thirteen through sixteen of this Complaint, and further alleges:

18. The Lease provides, in paragraph seven, that "[t]he [l]essor shall, unless hereto specified to the contrary, maintain the demised premises, including the building, and any and all equipment, fixtures, and appurtenances, whether severable or non-severable, furnished by the Lessor under this lease in good repair and reasonable condition, except in the case of damages arising from the act or the negligence of the Government's agency or employees."

19. The lease further provides, in paragraph sixteen, that "the Government shall have the right: to make repairs to or reconstruct the demised premises if the lessor fails to do so and the lease requires the lessor to repair or reconstruct, to perform said repairs or reconstruction for the account of the lessor, and to obtain reimbursement from the lessor for the cost therefore."

20. In the early 1990s, the Postal Service unilaterally decided to install air conditioners in the roof of the Property and to have other work done (the "Postal Work"), and had the Postal Work carried out.

21. The manner in which the Postal Work was carried out resulted in damage to the roof of the Property.

22. In or prior to 2004, the Postal Service unilaterally determined that the roof of the Property needed to be replaced and had that work carried out in 2004 without the consent or agreement of Mr. Sims.

23. The Postal Work to the roof of the Property was the direct cause of the condition of the roof that caused the Postal Service to determine that the roof needed to be replaced.

24. By letter of January 19, 2005, the Postal Service unilaterally informed Mr. Sims that, commencing that month, it would deduct $1,299.96 per month from its lease payments to him, and would continue to do so each month through the month of February 2013, and the Postal Service has done so, all without the consent or agreement of Mr. Sims.

25. The Postal Service stated that the purpose of this withholding was for it to obtain reimbursement for costs incurred in the above-described roof replacement, and that Mr. Sims, as the lessor and owner of the Property, was responsible for a portion of the expense of this roof replacement.

26. If fully implemented through February 2013, the result of the above-described decision by the Postal Service will result in the Postal Service withholding a total of $127,395.72 from Mr. Sims.

27. The lease agreement has no provision that allows the Postal Service to make such withholding.

28. In addition to the foregoing, the Postal Service cannot hold Mr. Sims responsible for a portion of the expense of the roof replacement in that the Postal Work implemented by the Postal Service caused any need for such replacement.

29. The Postal Service had no good faith basis on which to determine that Mr. Sims was responsible for a portion of the roof replacement costs.

30. Even if it had a good faith basis to determine Mr. Sims had such a responsibility, under the terms of the Lease the Postal Service had no good faith basis on which to withhold rent unilaterally.

**Propriety of Declaration**

31. A valid case or controversy exists sufficient for this Court to declare the rights and remedies of the Parties as to (a) the responsibility and obligation of Mr. Sims under the Lease to reimburse the Postal Service for the expense of the roof replacement, and (b) the right of the Postal Service to withhold any part of the rent due to Mr. Sims under the Lease for such a replacement, in that the decision of the Postal Service to deduct $1,299.96 per month up through the month of February 2013, from the monthly payment due to Mr. Sims as the lessor, poses the prospect of real and permanent injury to the interests of Mr. Sims, in that he will be deprived of money properly due to him under the lease agreement.

32. The controversy is ripe for determination at this time because the Postal Service has commenced deducting monies from its lease payments to Mr. Sims and has stated its intent to continue that practice.

33. Mr. Sims has the requisite standing to request this declaration, in that the decision of the Postal Service constitutes a concrete and adverse determination with respect to Mr. Sims'

interests.

## The Claim

34. Mr. Sims requests: (a) first, an Order of this Court declaring that the decision of the Postal Service to deduct monies from the lease to reimburse itself for the roof-repair cost it attributes as Mr. Sims' responsibility is in violation of the lease agreement and applicable law, and therefore is null and void (pursuant to 28 U.S.C. § 1491(b)(2)); and, (b) second, an Order declaring the Lease itself to be null and void as of the date of the Order due to the Postal Service's breach of its duties and obligations under the Lease.

## Request for Relief on the Complaint

The Plaintiff, Edward Sims, hereby demands and seeks that judgment be entered in favor of himself, and against the Postal Service, as follows:

1. For an Order declaring null and void the above-described determination of the Postal Service that Mr. Sims is responsible for the expense of the roof replacement.

2. For an Order declaring null and void the above-described determination that the Postal Service has the right to withhold any amount of the rent due and owing to Mr. Sims under the Lease.

3. For an Order that the Postal Service pay to Mr. Sims those portions of the rent monies that it has withheld up to the day of the entry of the Order, plus interest.

4. For an Order declaring that the Lease is rescinded as of the date of the Order, and hereafter is null and void.

5. For all reasonable costs and expenses incurred by Mr. Sims in relation to this civil action, plus all reasonable attorney's fees and costs; and

6. For such other and further relief as the Court deems just and equitable.

Respectfully submitted,

By: [signature]

William M. Palmer, Esq.
50 Congress Street, Suite 500
Boston, Massachusetts 02109
Telephone: (617) 523-5194
Facsimile: (617) 523-7324

Dated: August 18, 2005

Attorney for Edward Sims

ORIGINAL

Exception to SF-3
Approved by Bureau of the Budget
April 1, 1957

POST OFFICE DEPARTMENT
# LEASE

1. This LEASE, made and entered into this August day of 1, 19 63 by and between

Harold L. Sulak and Frances D. Sulak, husband and wife
2104 - 38th Avenue East
whose address is Seattle, Washington 98102

for themselves, their heirs, executors, administrators, successors, and assigns, hereafter called the Lessor, and the UNITED STATES of America hereinafter called the Government:

WITNESSETH: The parties hereto for the consideration hereinafter mentioned covenant and agree as follows:

2. The Lessor hereby leases to the Government the following described premises, viz:

All that certain one-story masonry building having inside measurements of 98'8" x 154'8", less 71'6" x 18' and less 8'6" x 61'6", providing approximately 12,563 net inside square feet; plus 71'6" x 18', providing a 1287 square-foot mailing platform; and the remainder of the 31,200 square-foot site to provide the improved and unimproved areas, including approximately 2790 square feet of parking area and approximately 13,125 square feet of maneuvering area; all being situated on Lots 1, 2, 3, 4, and the north 20 feet of Lot 5, Block 19, also known as Pearl Street between Second and Third Streets, City of Ellensburg, County of Kittitas, State of Washington,

to be used for postal purposes.

3. TO HAVE AND TO HOLD the said premises with their appurtenances for the term beginning March 14, 1963 and ending with March 13, 1983.

4. The government shall pay the Lessor an annual rental of Twenty three thousand one hundred thirty and no/100- - - - - - - - - - - Dollars ($ 23,130.00- - - - - - - - - - - - -) payable in equal installments at the end of each calendar month. Rent for part of month shall be prorated.

5. This lease may be renewed, at the option of the Government, for the following separate and consecutive terms and at the following annual rentals:

| | | | |
|---|---|---|---|
| Ten (10) | years at | $ 21,450.00 | per annum 7-93 |
| Five (5) | years at | $ 20,850.00 | per annum 3-98 |
| Five (5) | years at | $ 20,850.00 | per annum 3-2003 |
| Five (5) | years at | $ 20,850.00 | per annum |
| Five (5) | years at | $ 20,850.00 | per annum |
| | years at | $ | per annum |

provided notice be given in writing to the Lessor at least 90 days before the end of the original lease term or any renewal term; all other terms and conditions of this lease shall remain the same during any renewal term.

6. The Lessor shall furnish to the Government, under the terms of this lease, as part of the rental consideration, the following: Combination heating and ventilating equipment, including, but not limited to replacing the required filters; oil-fired heating system of sufficient size and capacity to maintain a temperature of 70 degrees Fahrenheit in all areas based on the design temperature used in the locality; light fixtures and replace ballasts; gas, water and electric meters as now installed in the demised premises.

POD Form 1449
June 1958

and the Lessor shall at Lessor's expense record this lease in the proper recording office.

7. The Lessor shall, unless herein specified to the contrary, maintain the demised premises, including the building and any and all equipment, fixtures, and appurtenances, whether severable or non-severable, furnished by the Lessor under this lease in good repair and tenantable condition, except in case of damage arising from the act or the negligence of the Government's agents or employees. For the purpose of so maintaining said premises and property, the Lessor may at reasonable times enter and inspect the same and make any necessary repairs thereto.

8. The Government may sublet all or any part of the premises or assign this lease but shall not be relieved from any obligation under this lease by reason of any such subletting or assignment.

9. The Government shall have the right to make alterations, attach fixtures and erect additions, structures or signs in or upon the premises hereby leased (provided such alterations, additions, structures or signs shall not be detrimental to or inconsistent with the rights granted to other tenants on the property or in the building in which said premises are located); which fixtures, additions or structures so placed in, upon or attached to the said premises shall be and remain the property of the Government and may be removed or otherwise disposed of by the Government. Prior to expiration or termination of this lease the Government shall if required by the Lessor by notice in writing sixty days in advance of such expiration or termination, restore the premises to as good condition as that existing at the time of entering upon the same under this lease, reasonable and ordinary wear and tear and damages by the elements or by circumstances over which the Government has no control, excepted.

DELETED

10. (a) This lease may be termina[illegible]ty days' notice in writing to the Lessor whenever the Post Office Department shall decide to move the o[illegible] Government-owned building which shall have been provided for it.

(b) This lease may be [illegible] upon ninety days' notice in writing to the Lessor whenever, in the judgment of the Post Office Department, the gr[illegible] the service at that office renders additional room necessary and the Lessor is unable or unwilling to furnish suitable and sufficient additional space at an additional rental satisfactory to the Department.

(c) If any building or any part of it on the leased property becomes unfit for use for the purposes leased, the lessor shall put the same in a satisfactory condition, as determined by the Post Office Department, for the purposes leased. If the lessor does not do so with reasonable diligence, the Post Office Department in its discretion may cancel the lease. For any period said building or any part thereof is unfit for the purposes leased, the rent shall be abated in proportion to the area determined by the Post Office Department to have been rendered unavailable to the Post Office Department by reason of such condition. *

11. No member of or Delegate to Congress or Resident Commissioner shall be admitted to any share or part of this lease or to any benefit to arise therefrom. Nothing, however, herein contained shall be construed to extend to any incorporated company, if the lease be for the general benefit of such corporation or company.

12. The following paragraphs were deleted before execution:

Paragraph 10, subparagraphs a) and b).

13. The following paragraphs were added before execution:

14. POD Form 1419, Tax Escalation Clause Rider.
15. POD Form 1421, Non-Discrimination Clause Rider.
16. POD Form 1449-A, Lease Rider.
17. Change in Ownership Rider.
18. Binder Rider.
19. Option to Purchase Rider.

*Unfitness for use does not include subsequent unsuitability arising from such matters as design, size, or location of the building.

## TAX ESCALATION CLAUSE RIDER

Para. 14. It is mutually understood and agreed that the rent herein reserved is based in part upon the payment by the lessor of general real estate taxes upon the land and the building appurtenant thereto in the sum of $3,800.00 per annum. It, therefore, is agreed that there shall be a readjustment of the rent hereby reserved in each year of the term hereby demised on the following basis:

(a) In the event that the amount of the general real estate taxes levied on said land and building for any tax year or part thereof within the term hereby demised shall be levied at a rate greater than the sum last-above mentioned, then after the lessor has paid such taxes the Government shall pay the lessor upon demand, accompanied by satisfactory proof as to correctness of the claim as additional rent due hereunder a sum equal to such excess; or in the event that the amount of general real estate taxes levied on said land and building for any tax year or part thereof within the term hereby demised shall be levied at a rate less than the sum last-above mentioned, the rent due hereunder shall be decreased by the amount of such decrease, it being understood that said readjustment of rent shall be made in each year of the term hereby demised including the terms of any renewal options. In the event that general real estate taxes are levied on the land only for any tax year or part thereof within the demised term, this entire paragraph shall be and remain operative in the same manner and to the same extent as though said taxes were levied on both land and building. The lessor shall pay the general real estate taxes levied hereunder before any fine, penalty, interest or cost may be added thereto for the non-payment thereof and at such time and manner and amount as to obtain any discount allowed by the taxing authority.

(b) The general real estate taxes referred to in subparagraph (a) of this Tax Escalation Clause which relate to a fiscal period of the taxing authority, a part of which period is prior to the commencement of the term of this lease, and a part of which is within the term of this lease, shall be so allocated that the portion of such taxes which that part of such fiscal period prior to the commencement of said lease term bears to such fiscal period shall be excluded in computing the amount of such taxes attributable to the demised term and the remainder thereof shall be considered as general real estate taxes levied within the demised term. A similar allocation shall be made to determine the amount of general real estate taxes which shall be considered as levied during the lease term or any renewal term where part of the fiscal period of the taxing authority is subsequent to the expiration of the lease term or any renewal term and a part of such fiscal period is within the lease term or a renewal term.

(c) The lessor shall furnish the Government copies of all notices which may affect the valuation of said land and building for general real estate tax purposes or which may affect the levy or assessment of general real estate taxes thereon. Such copies shall be delivered or mailed within three days from the receipt thereof by the lessor to the Assistant Postmaster General, Bureau of Facilities, Post Office Department, Washington 25, D. C., or to such other officer as he may in writing direct. The Government may contest the amount or validity of any valuation for general real estate tax purposes or of any levy or assessment of any general real estate taxes by appropriate legal proceedings either in the name of the Government or the name of the lessor or in the names of both. The lessor upon reasonable notice and request by the Government shall join in any such proceeding, but the lessor shall not be subject to any liability for the payment of any liabilities, costs or expenses in connection with any proceeding brought by the Government and the Government hereby covenants to indemnify and save harmless the lessor from any such liabilities, costs or expenses. The lessor shall cooperate with the Government in any such contest or proceeding and execute any documents or pleadings required for such purpose provided the lessor shall reasonably be satisfied that the facts and data set forth in such documents or pleadings are accurate.

POD Form 1419
Mar. 1958

POD, WASH., D. C.

Ellensburg, Washington

## NON-DISCRIMINATION CLAUSE

Para. 15. [redacted] the performance of [redacted]this contract, the contractor agrees as follows:

(1) The contractor will not discriminate against any employee or applicant for employment because of race, creed, color, or national origin. The contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, creed, color, or national origin. Such action shall include, but not be limited to the following: employment, upgrading, demotion or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the contracting officer setting forth the provisions of this non-discrimination clause.

(2) The contractor will, in all solicitations or advertisements for employees placed by or on behalf of the contractor, state that all qualified applicants will receive consideration for employment without regard to race, creed, color, or national origin.

(3) The contractor will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice, to be provided by the agency contracting officer, advising the said labor union or workers' representative of the contractor's commitments under this section, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

(4) The contractor will comply with all provisions of Executive Order No. 10925 of March 6, 1961[redacted] the rules, regulations, and relevant orders of the President's Committee on Equal Employment Opportunity created thereby.

(5) The contractor will furnish all information and reports required by Executive Order No. 10925 of March 6, 1961[redacted] rules, regulations, and orders of the said Committee, or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Committee for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

(6) In the event of the contractor's non-compliance with the non-discrimination clauses of this contract or with any of the said rules, regulations, or orders, this contract may [redacted] and the contractor may be declared ineligible for further government contracts in accordance with procedures authorized in Executive Order No. 10925 of March 6, 1961[redacted] sanctions may be imposed and remedies invoked as provided in the said Executive order or by rule, regulation, or order of the President's Committee on Equal Employment Opportunity, or as otherwise provided by law.

(7) The contractor will include the provisions of [redacted] paragraphs (1) through [redacted] every subcontract or purchase order unless exempted by rules, regulations, or orders of the President's Committee on Equal Employment Opportunity issued pursuant to section 303 of Executive Order No. 10925 of March 6, 1961[redacted] provisions will be binding upon each subcontractor or vendor. The contractor will take such action with respect to any subcontract or purchase order as the contracting agency may direct as a means of enforcing such provisions, including sanctions for non-compliance: *Provided, however,* that in the event the contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the contracting agency, the contractor may request the United States to enter into such litigation to protect the interests of the United States.

POST OFFICE DEPARTMENT

## LEASE RIDER

PARA. 16

(a) In addition to any other remedy afforded the Government by this lease, the Government shall have the right:

(1) to obtain reimbursement from the lessor for the excess cost to the Government of leasing such other facilities as the Government determines necessary to replace the demised premises, or any part thereof, being or remaining unavailable to the Government by reason of a breach of the conditions (including required repair and reconstruction) of this lease, and

(2) to make repairs to or reconstruct the demised premises if the lessor fails to do so and the lease requires the lessor to so repair or reconstruct, to perform said repairs or reconstruction for the account of the lessor, and to obtain reimbursement from the lessor for the cost thereof.

(b) If conditions should occur which would otherwise give the Government the right to cancel this lease or to incur a cost for which it could obtain reimbursement under this lease, the Government shall not have said rights unless it gives:

(1) written notice of said occurrence by certified or registered mail to the mortgagee and the assignee of moneys due or to become due under this lease whose names and addresses are furnished to the Government by lessor.

(2) said mortgagee and assignee not less than 45 days opportunity to cure the default by the lessor and the condition or conditions giving rise to said cancellation or reimbursement rights. Additional time may also be granted the above parties at the discretion of the Government.

Ellensburg, Washington

17. **CHANGE IN OWNERSHIP RIDER:** This lease is made pursuant to Agreement to Lease, the demised premises to the Government made by Artz, Ellis, and Stark, predecessors in interest to the Lessor herein, dated October 2, 1961, and accepted by the Government on April 27, 1962, the obligation of which the lessor herein has assumed.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

18. **BINDER RIDER:** It is expressly understood between the parties hereto that the terms and conditions of the certain Agreement to Lease dated October 2, 1961, and any amendment or modification thereto, furnished by Artz, Ellis, and Stark, and accepted by the Government on April 27, 1962, are made a part of this Lease and are to be complied with as though fully set forth herein.

## OPTION TO PURCHASE RIDER

In consideration of the award of this lease contract, the Government shall have the option to purchase the fee simple title to the leased premises, including the underlying land, at the following respective times and prices:

| | | |
|---|---|---|
| 1) | At end of basic 20-year lease term. . . . . . . . . . . . | $255,000.00 – 83 |
| 2) | At end of 10-year renewal option term. . . . . . . . . . . | 220,000.00 – 93 |
| 3) | At end of first 5-year renewal option term. . . . . . . . | 210,000.00 – 98 |
| 4) | At end of second 5-year renewal option term. . . . . . . | 200,000.00 – 2003 |
| 5) | At end of third 5-year renewal option term. . . . . . . . | 200,000.00 – 2008 |
| 6) | At end of fourth 5-year renewal option term. . . . . . . | 200,000.00 – 2013 |

all in accordance with any applicable Federal statutes in effect now or hereafter while this lease is in effect; provided, however, that the Government shall give the Lessor notice of election to purchase at least one year in advance of the respective times set out next above.